Good morning, Your Honors. If it pleases the Court, my name is Joe Bush. You get that first and one, and second and two. Yes, Your Honors. I have the privilege of representing the Hewlett-Packard Income Protection Plan on all three of these matters. This is the first of three cases that the Court is going to hear today involving that plan. The issue in the right case involves, as all of the claims do, a claim for long-term disability benefits. And each case will involve the question as to whether or not the plan administrator's decision, the plan administrator's voluntary plan administrators, or for short, VPA, abused its discretion in denying benefits. Now, in the right case, I think that there is substantial agreement among the parties in terms of some of the facts. The claim for disability and the evidence shows that plaintiff suffers from a combination of multiple psychological, medical, and neurophysical problems. The problems include fibromyalgia, attention deficit disorder, chronic fatigue syndrome, bipolar disorder, and organic brain disease syndrome. Now, the standard of review is going to be with respect to an abuse of discretion. Was it unreasonable for VPA to deny Ms. Wright's claim for long-term disability benefits under the terms of the plan as it existed at the time of her disability? The relevant provisions of the plan are found in the excerpts of record at pages 319 to 321 in this case. And the definition says, totally disabled and total disability mean that because of injury or sickness during the first 52 weeks following the onset of the injury or sickness, the member is continuously unable to perform each and every duty of his or her usual occupation. And after the initial 52-week period, the member is continuously unable to perform any occupation for which he or she is or may become qualified by reason of his or her education, training, or experience. It continues, the determination of total disability shall be made by the claims administrator on the basis of objective medical evidence. Objective medical evidence shall mean that evidence establishing facts or conditions as perceived without distortion by personal feelings, prejudice, or interpretations. Any condition diagnosed as or without regard to its designation is equivalent to attention deficit disorder, that's one of the items for which Ms. Wright has claimed disability, Chronic fatigue syndrome, another one, Epstein-Barr virus, or infectious non-mononucleosis, or fibromyalgia, that's also one, shall be disregarded in the determination of total disability during the period described in two above. Two meaning for long-term disability as opposed to short-term disability benefits. Organic brain syndrome is not on that list, right? That is correct, nor is bipolar disorder, Your Honor. With respect to any total disability caused or contributed to by mental illness, the following limitations shall apply. During the period described in two above, in other words, after the first 52 weeks, in the case of a disability resulting from a nervous or mental condition, excuse me, or disorder, the member shall be considered totally disabled only if he or she is confined to a hospital or other licensed long-term care facility for the treatment of such disability or has been so confined for 14 or more consecutive days during the preceding three months. No question here. There was no hospital confinement. An illness shall be considered a nervous or mental disorder if, one, the illness has psychological or behavioral manifestations or results in impairment of mental functioning due to any causes, including but not limited to social, psychological, genetic, physical, chemical, or biological, and two, the illness has a primary diagnosis that either is listed in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders or falls within diagnostic codes 290 through 319 in the International Classification of Diseases Ninth Revision. That's called the ICD-9 code. Now, in this instance, bipolar disorder and organic brain syndrome both have designations that fall within diagnostic codes 290 through 319. I believe that the bipolar disorder is 296.89. That's by Ms. Wright's treating psychiatrist, Dr. Peters, and according to her clinical psychologist, Dr. Perilla, the organic brain disease syndrome is 310.8. It continues. So now we have an exclusion that applies. And then it says benefit shall be payable with respect to the period described in 2 above for no more than 52 weeks for any disability resulting from a mental or nervous disorder. The limitations of this paragraph shall not apply to a total disability due to Alzheimer's disease, multiple sclerosis, amyotrophic lateral sclerosis, if I pronounced that correctly, traumatic brain injuries, schizophrenia, or other organic degenerative progressive diseases as determined by the claims administrator. And the real question is, was it unreasonable in interpreting the plan for a VPA to deny Ms. Wright's claim for disability based on an organic brain disease syndrome or bipolar disorder that had In the face of the last sentence of paragraph A, and I'm sure counsel will probably have that to show you in a blow-up, and I don't have any objection to the use of the blow-up. That's the question. Was it unreasonable in terms of interpreting it? Let me ask you a question about that. In the volume of information that the VPA had before it, was there evidence that leakage from the plaintiff's breast implants was medically linked to organic brain disorder? It was unclear in terms of the etiology of her organic brain syndrome. The If one looks to number one under the definition in terms of the exclusions, the illness is like I'm not on exclusions right now. Right. It's just a simple fact.  Did the VPA have before it medical evidence that leakage from the breast implants was medically linked to organic brain disease? It was unclear. With respect to that, let's assume that The answer suggests that it could be yes, it could be no. That is correct, Your Honor. But if you go back, let's assume for a moment that it's yes. Did the VPA address that? It did not because organic brain syndrome has a code of 310.8, which falls within the ICD-9. Under number one, when we looked at the exclusions, the illness has psychological or behavioral manifestations or results in impairment of mental functioning due to any causes, including physical or chemical. Can we conclude from what you've told us that there was evidence before the VPA which would suggest that leakage from the breast implants was medically linked to organic brain disease? No doctor made such an opinion. There were a suggestion that it could, it might, or might not have by one of her treating physicians. But everybody said that the etiology was unclear, the ultimate conclusion. Did the VPA address that and distinguish it? Did not, Your Honor. The reason being because the cause for what would result in a diagnosis under ICD-9 of 310.8 would not be relevant. You're providing your argument, which what us sitting here today justifies they're not dealing with this evidence. That is correct, Your Honor. So that suggests to me that they did not. They did not address this. Whether it was clear, unclear, crystal clear or not, they didn't address it, right? They did not address that as a basis for denying the claim for disability. That is correct, Your Honor. Okay. And the question before this Court is whether it was an abuse of discretion for VPA where we have a diagnosis of organic brain syndrome under 310.8. And remember, the cause is irrelevant because if you have that diagnosis, you must be hospitalized, that was it an abuse of discretion to deny the claim for benefits? Now, the last sentence in terms of what Judge Levy said was that any organic disease, when it's determined by the claims administrator to be organic, should be treated as Alzheimer's, multiple sclerosis, amyotrophic lateral sclerosis, or schizophrenia. In other words, that as a class, anybody suffering from organic brain disease should be granted disability benefits without restriction up to the second 52 weeks and without regard as to whether or not they have been hospitalized. Now, the plan doesn't say that, though. The plan does not say that. The plan says it has to be organic, which it was. Yes. It has to be degenerative, which I'm not sure the administrator found or didn't find. It has to be progressive, which I think the administrator did not touch upon. However, he did determine that it was not going to be a covered item. But what do we do about the fact that the administrator failed to make a determination perhaps as to whether it was a degenerative organic disease, if you will, and certainly did not make any determination as to whether it was progressive, and yet denied it anyway? That is because it falls within the class of ICD-9 codes, Your Honor. And if the fault was that they failed to address this provision, then the remedy was not to rule, but for Judge Levy to remand the matter back to the claims administrator to address that sentence, what it meant, because the claims administrator has discretion under the terms of the plan to analyze and to interpret that provision. This is not like the Lange case, which has been cited to the Court, where it was a de novo standard of review. In that case, this Court said if we were under an arbitrary and capricious standard of review, the remedy should have been to remand it to the claims administrator or plan administrator and get an interpretation. But because it's de novo review, we can look at it ourselves. And that's not what happened here. Your Honors, I only have about six minutes left, if I could reserve that for rebuttal. Are there any other questions, however, at this point? Robertson, I don't see any. You can certainly reserve it. And in the other two cases, you need not repeat arguments. You can rely upon arguments you've made here. Okay. There are differences in the plan in the last case. It's a different version of the plan that predates it. We understand. Fibromyalgia is not excluded in the third case. Say again. Fibromyalgia is not excluded in the third case. That is correct, Your Honor. And also in the third case, it's a 39-week determination. Thank you. Roberts. Good morning, Your Honors. If it please the Court, my name is John Mounier. I have the honor of representing Ms. Cathy Wright in this case. I want to emphasize, Your Honors, that it's the policy of the ERISA law to increase the likelihood that participants and beneficiaries under single-employer defined benefit pension plans will receive their full benefits. That's the starting point that Congress announced to all of us. And I want to emphasize that in this hearing today. In this case, the plan created its document. And I have blown up, for demonstration purposes, page ER-320 and ER-321, Your Honors. And I'd point out one item, Your Honor, that as written, the plan at ER-320 says, with respect to total disability caused or contributed to by mental illness, alcohol, or drug abuse, the following limitations shall apply. So all of your – everything that follows is considered a limitation according to the written word of the plan. Then it has a discussion of mental illness. And some limitations include a hospitalization of 14 days. And then if you look to page ER-321, they also have some limitations in subparagraph 2 about certain diagnosis and classifications. And then you get down to the last portion of paragraph A here, these limitations. And what they wrote is, the limitations of this paragraph A shall not apply to a total disability due to Alzheimer's disease, multiple sclerosis, amyotrophic lateral sclerosis, traumatic brain injuries, schizophrenia, or other organic degenerative progressive diseases as determined by the claims administrator. I, of course, want to emphasize this last sentence. And this last sentence says that if you have one of these diseases that are referred to in the last sentence, all of the limitations go out, including the need for hospitalization of 14 days, including the designation under a ISD category, and including the statement that benefits on page 321 shall only be payable for 52 weeks. So this is what they wrote. This is a plan that they published and announced, and this is our starting point. Organic brain syndrome, that's a general medical term referring to physical disorders that cause deteriorating mental functions or decreased mental functions. It may be an important difference, whether it's decreased or deteriorating. I agree, Your Honor. The ‑‑ because the administrator just said, you're denied, they did not give us a chance to ask the treating psychiatrist, the treating neuropsychologist, has there been progression? Is there ongoing degeneration? I would also point out, Your Honor, that the plan doesn't say that the disease has got to be degenerative forever, that if you start it off at 100 percent of your strength and cognitive powers, and you degenerate through the disease to, say, only having 60 percent less, and then through the medicine and so forth you can plateau, it doesn't say, oh, no, the degeneration has got to continue down to zero or that it's got to progress down to zero. We do have evidence that the cognitive powers, it's in our record, have degenerated, and that Ms. Wright lacks those cognitive powers as a result of the organic brain syndrome. There has been a decrease. And it seems to me like it's sort of a smoke screen for the plan to say, well, although we didn't mention it in our denials, and we haven't given you any way to go to inform us if there is a how much degeneration, to now have them argue that it's got to be degenerative and it's got to be progressive without any definition of how much it has to progress. Since the administrator did not, at least did not tell us in any way about how he or they or it exercise any discretion in this area, it's sort of metaphysically impossible to defer to the so-called exercise of discretion. It, as far as we know, doesn't exist on the record. And why isn't the remedy for that to say, okay, you have to send it back to the claims administrator to exercise discretion? With regard to this exclusion. That is one remedy. I believe that the district court judge who examined the record and made a finding that there was no discretion exercised may have been frustrated or thought that it would be a meaningless act to send it back at that point if they had ignored so far all these ongoing reports of organic brain syndrome. I think if, I got the impression that the district court thought that it was enough to fit into the exclusion if the condition was organic, period, without worrying about whether it's progressive, degenerative, that those were separate alternative categories, that was the impression I got. Well, at the hearing, the judge did comment that the plan did not say here's how we evaluate organic brain syndrome, we don't find that it's progressive, so it's out. Or the plan did not say, as they argue today, well, even if it is progressive and organic and degenerative, the category of diagnosis that we say is eliminated really isn't eliminated, so you lose on that ground. They didn't give us any way to go. And I think the judge said, you've got to be reasonable then. You've got to look at the reasonable language, and looking at the medical reports, looking at Dr. Perrello talking about in his final report how she has lost cognitive functions and abilities, reasonably concluded that organic brain syndrome is an organic, degenerative, progressive disease. But there are words after that. Correct, as determined by the claims administrator. Right. And the claims administrator is missing an action on this one, Your Honor. We don't know if they've ever recognized any disease that is degenerative, progressive, and organic. They argue, they send Gibson, Dunn, and Crutcher in to argue, well, this really means something that is sort of similar to Alzheimer's disease or sort of similar to multiple sclerosis. It doesn't really mean what it says, any organic, degenerative, progressive disease. So that's why I don't think it makes sense to send it back, Your Honor. I think that since there was no discretion exercised, there's no discretion to be honored or deferred to, and it makes sense for this Court to confirm the award and to use its common sense and experience to say that organic brain syndrome fits this category of a progressive, degenerative disease. Thank you, Your Honors. Thank you, counsel. Bravado? I don't think I'll be using up my full remaining six minutes. Maybe I could take it over to the other ones, but I'm sure that that won't be necessary either. I would like to just answer some of the questions that the Court posed. First, is organic enough? And I think that's what Judge Levy found in this case. And I would just point out to the Court, as we did in our brief, that those mental disorders that have ICD-9 codes from 290 to 294 are all defined as organic brain disorders. And it would make no sense in terms of interpreting the terms of the plan where you have a specific exclusion for codes having organic dysfunctions and having them included as somehow that they could be, the claims administrator could override the terms of the plan. And it should not be just for Ms. Wright. It would have to be for everybody in her situation. And I suggest that it would be not just for somebody who has a diagnosis of 310.8, but also anybody in the entire category of 310, which talks about organic disorders. The diagnostic codes 290 through 319 appear in paragraph A-2. Yes. Which is at 320, going over to 321 of the ERs. Yes. The exception to the exclusion, which appears just above subparagraph B, starting with the words, the limitations, would seem to carve out of even those diagnostic codes. Am I reading that wrong? I believe so, Your Honor. You're welcome to use my answer. I mean, it says oh, thank you. I've got mine. So it's — I've got it color-coded so I don't get lost. It says, with respect to any total disability caused or contributed to by mental illness, the following limitations shall apply. And what it's — what under mental illness, it talks about that you must have been hospitalized due to mental illness. And if you're hospitalized due to mental illness, and unlike the Kunin case and the Kunin case, this plan defines mental illness, and it has to have both a psychological or behavioral aspect. Here's my question, and I'm sorry if I misunderstood, Your Honor. And you're into considerably more detail on this, perhaps, than I am. But are the listing of the diagnostic codes in subparagraph A-2, do those constitute limitations? No. Those constitute the definition of what constitutes a mental or nervous disorder. Does — is Alzheimer's listed in those diagnostic codes? I have looked at them, Your Honor, and it is not. Senile dementia is. Alzheimer is not. And amyotropic lateral sclerosis? The others are not, Your Honor. Schizophrenia — And I wanted to answer Judge Hawkins' question that he posed to me in terms of what was considered by BPA. In the denial letter on the appeal, if you look at ER-28, it discusses the etiology of organic brain syndrome. There was a suggestion by Dr. Campagna that she had had a rupture to her right breast implant in 1997. And Dr. Campagna then recommended neuropsychological testing be conducted to see if that was a cause. That testing was done by Dr. Perillo, who could not ascribe the rupture in the silicone breast implant to be the cause for the organic brain syndrome. Dr. Rothberg, who was the psychiatrist who examined on behalf of the plan, examined Ms. Wright, did contact Dr. Perillo to ask him if he had been able to pinpoint a cause for it. And Dr. Rothberg reported that Dr. Perillo stated that he was unable to pinpoint the etiology of Ms. Wright's organic brain syndrome. So the question that Your Honor posed to me, I may have misspoken, the issue was addressed in terms of what was the cause. And the conclusion that BPA reached was in the next paragraph, she is suffering from organic brain syndrome from an unknown cause. They don't know what it was. But they concluded that because it fit within the diagnostic codes and she had not been hospitalized, that she would not be eligible for additional benefits. Is there any other questions, Your Honor? I'm finished. Roberts. I don't see any. Thank you, counsel. Thank you both for your arguments. The case just argued will be submitted for decision.
judges: Canby, Thompson, Hawkins